| DISTRICT COURT OF THE VIRGIN ISLANDS |
|---|
| DIVISION OF ST. CROIX |

REGINA EVANS,

                    **Plaintiff,**

**v.**                                                      **1:23-cv-00042-WAL-EAH**

**LIMETREE BAY TERMINALS d/b/a**
**OCEAN POINT TERMINALS,**

                    **Defendant.**
_____

**TO:   Lee J. Rohn, Esq.**
           **Alicia M. Chiu, Esq.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the Motion to Stay Proceedings and Compel

Arbitration filed by Defendant Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals,

LLC ("Terminals"). Dkt. No. 3. Plaintiff Regina Evans has opposed the motion, Dkt. No. 10, and

Terminals filed a reply, Dkt. No. 12. For the reasons that follow, the Court will grant the

motion.

## BACKGROUND

Evans filed a complaint in the Superior Court of the Virgin Islands on September 8,

2023 alleging claims under the Virgin Islands Wrongful Discharge Act, the Family Medical

Leave Act ("FMLA"), and a claim for Intentional Infliction of Emotional Distress against her

former employer, Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals, LLC. Dkt. No.

1-1. The complaint described how Evans suffered a work-related injury in January 2022 and

was out of work for eight months. Dkt. No. 1-1, ¶¶ 5, 7. She suffered a fall in February 2023,

came to work on crutches, and performed her duties. *Id.* ¶¶ 9-23. On February 27, 2023, a

supervisor asked what happened to her, and later told Evans to leave the unit. The supervisor

escorted her to the Human Resources office. *Id.* ¶ 24-26, 32. Evans wrote a written statement,

and was told to go home and stay home and that there would be an investigation. *Id.* ¶ 33. At

an April 14, 2023 meeting, Evans was told she would be terminated, having violated

Terminals's rules by coming to work on crutches without informing her supervisor. *Id.* ¶¶

38-40. Evans sought monetary damages. *Id.*, "Wherefore" Clause.

On October 5, 2023, Terminals removed the case to district court based on federal

question jurisdiction, with supplemental jurisdiction over the remaining claims. Dkt. No. 1.

A week later, Terminals filed the instant Motion to Stay Proceedings and Compel

Arbitration (the "Motion"), Dkt. No. 3, with a memorandum in support, Dkt. No. 4. In its

memorandum, Terminals relied on a Declaration from Brian Dore, its current Human

Resources Manager, to provide additional background facts. Dore averred that Evans was

"continuously employed by Defendant or its affiliate Limetree Bay Refining, LLC ("LBR")

from April 1, 2019 to April 14, 2023." Dkt. No 4-1, ¶ 3. He added that Evans was initially

employed by Terminals as an intern from April 1 to May 5, 2019; prior to the end of her

internship, she "transferred" to LBR as a process operator, and worked there from May 6,

2019 to September 19, 2021. When LBR ended its business operations, Evans "transferred"

back to Terminals and worked as a waste water operator from September 20, 2021 to April

14, 2023. *Id.* Evans signed an Arbitration Agreement on April 1, 2019, *id.* ¶ 4, which Dore

attached to his Declaration, Dkt. No. 4-1 at 3-7.

*Evans v. Limetree Bay Terminals*
1:23-cv-00042-WAL-EAH
Order
Page 3

Terminals quoted language from the Arbitration Agreement stating that Terminals, "its parent corporation (if any), affiliates, subsidiaries, divisions, successors, assigns (hereafter referred to as 'the Company')" and "you" (i.e. Evans) "agree pursuant to this Arbitration Agreement ("Agreement") to arbitrate covered disputes, in lieu of litigating in court." Dkt. No. 4-1 at 3. The Agreement stated that "[t]he arbitrator, and not any federal, territorial or local court or agency, shall have exclusive authority to resolve any dispute, relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable[.]" Dkt. No. 4-1 at 4 (¶C). It covered claims arising out of Evans's employment, including termination, and specified that Family Medical Leave Act, Virgin Islands Wrongful Discharge Act, and common law territorial claims were covered by the Agreement. *Id.* at 3. By signing the Agreement, Evans agreed that she understood its terms and that covered claims were to be submitted to arbitration. *Id.* at 7.

Terminals argued that, to the extent Evans would contend that the Agreement was unenforceable, the parties assigned the question of arbitrability to the arbitrator, and the Court must grant the motion to compel despite any issue regarding arbitrability. Dkt. No. 4 at 5-6 (citing Dkt. No. 4-1, ¶C). Further, Evans's transfers between Terminals and LBR did not invalidate the Agreement, which was in effect throughout her employment with Terminals and LBR because LBR was an affiliate of Terminals, and the Agreement applied to claims arising from Evans's employment with Terminals or an affiliate such as LBR. *Id.* The

Agreement also remained in effect given that it survived termination of Evans's employment with Terminals or an affiliate. *Id*. at 6.

Terminals went on to argue that the Agreement was a valid agreement to arbitrate, as Virgin Islands law enforces such agreements as contracts. Evans signed the Agreement, establishing her intent to arbitrate her claims. *Id.* at 6-7. Finally, her claims were within the scope of the Agreement as they arose out of her employment (including termination), and her FMLA and Wrongful Discharge Act claims were specifically mentioned as being covered. *Id*. at 8. Consequently, Terminals sought an Order compelling arbitration between Evans and Terminals. *Id.*

On October 17, 2023, Evans filed a First Amended Complaint. Dkt. No. 5. Her primary amendments were to remove the FMLA claim and to add a Negligent Infliction of Emotional Distress claim to her Intentional Infliction of Emotional Distress Claim.[1] Dkt. No 5-2.

In opposing Terminals' Motion, Evans argued that the Court could decide issues concerning whether a valid arbitration agreement existed, which had to be determined before addressing whether the actual claims were subject to arbitration. *Id.* at 2. Evans disputed that such a valid contract existed because she entered into the Agreement when she was an intern, and it did not apply to the unrelated position she was hired for two years

---

[1] Evans then filed a motion to remand, arguing that without the FMLA claim, federal question jurisdiction no longer existed over her action. Dkt. No. 6. Terminals opposed the motion to remand, asserting that Evans was engaging in forum manipulation and that diversity jurisdiction existed over the complaint. Dkt. No. 9.

later. Dkt. No. 10 at 2, 4. She contended that no evidence showed she "transferred" to a separate company (LBR); rather she was hired by a separate company. *Id.* at 5.

Evans attached an Affirmation in which she recounted that when she started her internship at Terminals in April 2019, she was given documents to sign, including the Agreement; she did not dispute that she signed it. Dkt. No. 10-1 at 1, 3. She started working for LBR in May 2019, with a different chain of command and processes; in September 2021, when LBR was closing, she received a letter from Terminals offering employment as a Wastewater Operator. *Id.* at 1-2. She did not sign an Arbitration Agreement at that time and had no idea that any arbitration agreement could be in effect. *Id*. Evans also attached a September 2021 offer letter from Terminals stating that LBR was shutting down the refinery but Terminals was continuing to operate the storage terminal and she was selected to continue her employment with Terminals as a transferred employee. *Id.* at 5. The letter referred to LBR as a "sister company owned by Limetree Bay Energy, LLC." *Id*.

Evans cited documents filed by Terminals prior to a March 2023 hearing in federal court in the "Discharge Cases"[2] where plaintiffs (individual St. Croix residents) had moved for a temporary restraining order and preliminary injunction against, inter alia, Terminals and LBR Liquidating Trust, alleging that the refinery was jointly owned by LBR (as predecessor-in-interest to the LBR Liquidating Trust) and Terminals. *Id.* at 7-8. Terminals's

---

[2] These cases are: *Boynes v. Limetree Bay Ventures, LLC*, 1:23-cv-253 (D.V.I.); *Shirley v. Limetree Bay Ventures, LLC*, 1:23-cv-259 (D.V.I.); *Charles v. Limetree Bay Ventures, LLC*, 1:21-cv-260 (D.V.I.); and *Cotton v. Limetree Bay Ventures, LLC*, 1:21-cv-261 (D.V.I.).

*Evans v. Limetree Bay Terminals*
1:23-cv-00042-WAL-EAH
Order
Page 6

filing in that proceeding (attached as Dkt. No. 10-3) contradicted the assertion that LBR was an affiliate of Terminals because it expressly stated that plaintiffs were "improperly lump[ing] Terminals with now-insolvent [LBR]"; the two entities were "separate and distinct legal entities" with "separate and different businesses"; and Terminals "did not own and operate the Refinery from its restart through. . . May 2021." Dkt. No. 10-3 at 2, 4, 33. Evans also cited statements by Jeffrey A. Charles, Terminals's Chief Operating Officer, from a March 2023 hearing in the Discharge Cases in which he testified regarding the separateness of the two businesses. Dkt. No. 10 at 8-11 (quoting Dkt. No. 10-5 at 134, 175, 182-85, 187, 190, 210, 216, 221-22, 272, 273, 278, 280). In addition, Evans attached a Declaration by Akeel St. Jean, Senior Counsel at Terminals, who averred that "Terminals is and has always been a separate and distinct legal entity from [LBR]." Dkt. No. 10-4 ¶ 2.

Evans concluded that Terminals could not credibly argue that it and LBR were affiliates when it had presented significant testimony in the Discharge Cases to argue that they were separate and distinct entities. Dkt. No. 10 at 11-12 (citing cases on judicial estoppel and citing the definition of "affiliate" and "affiliated company" in Black's Law Dictionary, the Virgin Islands Code, and Federal Treasury Department Regulations). *Id.* at 5-6.

Given this context, Evans posited that she could not be compelled to arbitrate under the Agreement because (1) she signed an Agreement as an intern at Terminals; (2) she then applied to a separate entity and worked there for two years; (3) when the separate entity was closing, she was offered a different position at Terminals, which she accepted; and (4)

she did not sign a new Agreement when she started work at Terminals. Dkt. No. 10 at 12-13.

Her situation was similar to that in *Varma v. TCC Wireless, LLC*, 478 F. Supp. 3d 724, 726 (N.D.

Ill. 2020), in which an employee worked at a company where he signed an arbitration

agreement, quit, and later returned to work at the company. The court held that the

arbitration agreement did not govern the employment relationship when the employee

returned to work at the company after he had quit. Similarly here, the Agreement ceased to

apply after she went to work for LBR because it was a separate and distinct entity, and there

was no current arbitration agreement when she returned to work at Terminals years later

in a different position. *Id*. at 13-14.

In its reply, Terminals asserted that the Arbitrator should decide whether the dispute

is governed by the Agreement, as the Agreement delegated the question of arbitrability to

the arbitrator. Dkt. No. 12 at 2. Evans, however, relied on cases challenging a different

issue—formation of the Agreement itself. There was no issue or dispute here as to whether

the Agreement existed and was signed. *Id*. Terminals also contended that it and LBR were

"sibling corporations" that were separate and distinct legal entities. *Id*. at 3-4. Because they

were affiliates, *Varma v. TCC Wireless, LLC*, cited by Evans, did not apply. *Id*. at 4-5.

## DISCUSSION

### I.      Standard of Review

As a threshold matter, when deciding a motion to compel arbitration, a court must first

determine the applicable standard of review: whether it applies a motion to dismiss standard

*Evans v. Limetree Bay Terminals*
1:23-cv-00042-WAL-EAH
Order
Page 8

under Rule 12(b)(6) or a summary judgment standard under Rule 56. *See Berkelhammer v.*

*ADP Totalsource Grp., Inc.*, 74 F.4th 115, 117 n.3 (3d Cir. 2023). The Circuit's test for

determining which standard applies is described in *Guidotti v. Legal Helpers Debt Resol.,*

*L.L.C.*, 716 F.3d 764 (3d Cir. 2013):

> [W]hen it is apparent, based on 'the face of a complaint, and documents relied
> upon in the complaint,' that certain of a party's claims 'are subject to an
> enforceable arbitration clause, a motion to compel arbitration should be
> considered under a Rule 12(b)(6) standard without discovery's delay.' But if the
> complaint and its supporting documents are unclear regarding the agreement to
> arbitrate, or if the plaintiff has responded to a motion to compel arbitration *with*
> *additional facts sufficient to place the agreement to arbitrate in issue*, then 'the
> parties should be entitled to discovery on the question of arbitrability before a
> court entertains further briefing on [the] question.'

*Id.* at 776 (citations omitted; emphasis added). Both the complaint and amended complaint

did not mention the Agreement at all, as Evans discussed events in 2023 that led to her

termination. Terminals provided a copy of the Agreement in its Motion. Further, neither

party discussed the standard of review, although they both provided additional facts by

affidavits, and Evans provided testimony and documents from other cases regarding the

issue of whether LBR was a subsidiary of Terminals.

Case law also provides that, "[i]f a party attaches an authentic arbitration agreement

to a Motion to Compel arbitration, the Court must apply the Rule 12(b)(6) standard unless

the plaintiff responds to a motion to compel arbitration with additional facts sufficient to

place the agreement to arbitrate in issue." *Parker v. Briad Wenco, LLC*, No. 18-cv-04860, 2019

WL 2521537, at *2 (E.D. Pa. May 14, 2019) (internal quotation marks omitted). Here, as

discussed below, Evans has not placed the agreement to arbitrate in issue, as she has acknowledged she signed it and does not attack the validity of the agreement. Rather, she disputes the applicability of the Agreement to her termination—specifically, if LBR constitutes an "affiliate" of Terminals so as to be included in the definition of "company" in the Agreement. As a result, the Rule 12(b)(6) standard applies. *See Deardorff v. Cellular Sales of Knoxville, Inc.,* No.19-cv-2642, 2022 WL 407396, at *3 (E.D. Pa. Feb. 9, 2022) (applying Rule 12(b)(6) standard because plaintiffs did not point to "additional facts sufficient to place the agreement to arbitrate at issue"); *Lawson v. City of Phila.*, 18-cv-1912, 2019 WL 934976, at *3 (E.D. Pa. Feb. 25, 2019) (applying Rule 12(b)(6) standard because the parties' disagreement as to arbitrability pertained to the contractual language, but their agreement to the contract and arbitration provision was undisputed).

## II.    Applicable Law

### A.  The Federal Arbitration Act

The Federal Arbitration Act ("FAA") provides that "[a] written provision . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. That statute places arbitration agreements "upon the same footing as other contracts, . . . [making] arbitration agreements as enforceable as other contracts." *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 338–39 (3d Cir. 2023) (internal quotation marks omitted). As a result, "a court must hold a party to its arbitration contract just as the court would to any other kind."

*Evans v. Limetree Bay Terminals*
1:23-cv-00042-WAL-EAH
Order
Page 10

*Morgan v. Sundance, Inc.*, __ U.S. __, 142 S. Ct. 1708, 1713 (2022). Because arbitration agreements are on an "equal footing" with other contracts, "they may be invalidated by generally applicable contract defenses, such as fraud, duress or unconscionability." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010) (internal quotation marks omitted).

"[A] court may submit to arbitration only those disputes . . . that the parties have agreed to submit." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010) (internal quotation marks omitted). Indeed, it is consent that allows arbitrators to decide cases at all because arbitrators "derive their powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution." *Lamps Plus, Inc. v. Varela*, __ U.S. __, 139 S. Ct. 1407, 1416 (2019) (internal quotation marks omitted).

The Third Circuit has held that "[t]he federal policy encouraging recourse to arbitration requires federal courts to look first to the relevant state law of contracts . . . in deciding whether an arbitration agreement is valid under the FAA." *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 214 (3d Cir. 2003). In this case, Paragraph E of the Agreement indicates that Virgin Islands law applies. Dkt. No. 4-1 at 6. Under Virgin Islands law, "arbitration is a matter of contract, and . . . courts should strive to . . . implement the intent of the parties." *Gov't of the V.I., Dep't of Ed. v. St. Thomas/St. John Educ. Adm'rs Ass'n, Local 101,* 67 V.I. 623, 638 (2017) (citations omitted); *see also Whyte v. Bockino,* 69 V.I. 749, 764 (2018) ("General principles of contract apply to arbitration contracts."). "In the Virgin Islands, a valid contract requires a 'bargain in which there is a mutual assent to the exchange, and consideration.'" *Valentin v.*

*Evans v. Limetree Bay Terminals*
1:23-cv-00042-WAL-EAH
Order
Page 11

*Grapetree Shores*, No. SX-11-CV-305, 2015 WL 13579631, at *3 (V.I. Super. Ct. June 30, 2015) (internal quotation marks omitted). "A party's signature on a contract is a clear manifestation of assent." *Rivera v. Sharp*, No. 08-cv-0020, 2021 WL 2228492, at *8 (D.V.I. June 1, 2021), *aff'd* No. 21-2254, 2022 WL 2712869 (3d Cir. July 13, 2022).

A party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration. *In re Pharm Benefit Managers Antitrust Litig.*, 700 F.3d 109, 116 (3d Cir. 2012); *Egan v. Regeneron Pharms. Inc.*, No. 22-CV-1981, 2023 WL 1997444, at *3 (D.N.J. Feb. 10, 2023) ("Therefore, the Court may compel a party to arbitrate where it failed to comply with an agreement to arbitrate, and to stay proceedings in any matter subject to arbitration.") (citing *Romanov v. Microsoft Corp.*, No. CV 21-03564, 2021 WL 3486938, at *3 (D.N.J. Aug. 9, 2021) and 9 U.S.C. §§ 2-4).

### B. Gateway Arbitrability Issues: The Delegation Clause

Given that "arbitration is a matter of contract," courts must enforce such contracts "according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524, 529 (2019). Some arbitration agreements—like the one here—contain "delegation provisions" that delegate resolution of any gateway disputes relating to the applicability and enforceability of the agreement to the arbitrator.

> The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.

*Evans v. Limetree Bay Terminals*
1:23-cv-00042-WAL-EAH
Order
Page 12

> This line of cases merely reflects the principle that arbitration is a matter of contract. An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.

*Rent-A-Center*, 561 U.S. at 69-70 (citations omitted).  "Where such a clause is included, courts cannot decide threshold questions of arbitrability unless a party challenges the delegation clause specifically and the court concludes that the delegation clause is not enforceable." *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 215 (3d Cir. 2019) (internal quotation marks and alterations omitted). "The rationale is that a delegation clause is severable from the underlying arbitration agreement such that it is separately entitled to FAA-treatment—that is, unless specifically (and successfully) challenged, the clause is in and of itself treated as a valid contract that must be enforced under the FAA's enforcement provisions." *Rent-A-Center*, 561 U.S. at 70, 72. To specifically challenge the clause, a party must at least reference the provision in its opposition to a motion to compel arbitration. *See id*. at 72 (finding no specific challenge to a delegation clause where, among other things, the party's opposition brief "nowhere . . . even mention[ed] the delegation provision."). Contesting the validity of an arbitration agreement as a whole, without specifically disputing the delegation clause contained therein, is not sufficient to challenge the delegation provision. *Id.* at 70-75,

Delegation of threshold arbitrability questions to the arbitrator is permitted "so long as the parties' agreement does so by clear and unmistakable' evidence." *Henry Schein,* 139 S. Ct. at 530 (internal quotation marks omitted). "Case law suggests that to demonstrate clear

and unmistakable intent of to delegate questions of arbitrability, provisions must be both specific and exclusive. For example, expressly stating that issues regarding the validity or enforceability of an arbitration agreement shall be determined by an arbitrator is likely sufficient." *Jean v. Bucknell Univ.*, No. 4:20-CV-01722, 2021 WL 1521724, at *5 (M.D. Pa. Apr. 16, 2021) (collecting cases); *see also Deardorff*, 2022 WL 407396, at *9 (holding that language providing that "all disputes between [the parties] must be arbitrated, expressly including, but not limited to, (i) any dispute about the interpretation, validity or enforcement of this Agreement" clearly and unmistakably demonstrated the parties' delegation of gateway issues of arbitrability to the arbitrator). Where the agreement is broadly worded to require the submission of "all disputes" to the arbitrator, the question of arbitrability inures to the arbitrator. *Shaw Grp., Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003).

## III.    Analysis

Here, Evans does not assert any argument that challenges the formation of the Agreement—i.e., that it is invalid. *See Rent-A-Center*, 561 U.S. at 68 (contracts "may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability."). Although Evans "disputes that there is a valid contract because the arbitration agreement relied upon by Defendant was entered into as an internship position years ago and does not apply to the new position Plaintiff was hired for over two years later by [Terminals] in 2021, which is completely unrelated to the internship position," Dkt. No. 10 at 2, this does not constitute a challenge to the "validity" of the contract, given that validity

relates to contract formation contested on the basis of "fraud, duress, or unconscionability."

*Rent-A-Center,* 561 U.S. at 68. She clarifies that this Court "must decide whether the

Arbitration Agreement Plaintiff signed in 2019, during an internship, *applies* to her new

employment with Defendant over two years later." Dkt. No. 10 at 4 (emphasis added); *see id*.

at 16 ("Therefore, the Arbitration Agreement cannot *apply* to Plaintiff's claims in the instant

case."). She is in fact challenging the Agreement's *applicability*—an issue covered by the

delegation clause, rather than its validity.

Moreover, the Agreement provided that the parties received "wholly adequate"

consideration to support the agreement. Dkt. No 4-1 at 6 (¶F). In the paragraph directly

above the signature line, the Agreement set forth that Evans "knowingly and freely agree[d]

to this mutual agreement to arbitrate claims, which otherwise could have been brought in

court." *Id*. ¶ G. Under Virgin Islands law, the agreement was a valid contract, *Valentin*, 2015

WL 13579631, at *3, and her signature was a clear manifestation of her assent, *Rivera*, 2021

WL 2228492, at *8.  Evans did not dispute that she signed it, Dkt. No. 10-1 at 3, and did not

dispute that it applied to her claims. Rather, the thrust of her argument was that the 2019

Agreement did not apply to her new job at Terminals (d/b/a Ocean Point) because LBR was

not an affiliate of Terminals—given how "Company" was defined in the Agreement—and

therefore when she went to work for LBR after one month as a Terminals intern,[3] that

---

[3] The Agreement did not specify that it applied to Evans based on the job she was hired for
when she signed it. Dkt. No. 4-1 at 3-7. It simply covered Evans as an employee.

constituted a break in her employment with Terminals and ended the Agreement, which made the Agreement inapplicable to her new position and 2023 termination. Dkt. No. 10 at 2, 4-13.

Thus, where there is "no issue as to whether the parties mutually assented to [the arbitration agreement], we turn directly to the question of whether the delegation provision clearly and unmistakably commits questions related to arbitrability to the arbitrator." *Deardorff*, 2022 WL 407396, at *9 n.7 (citing *MZM Constr. Co., Inc. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 401-02 (3d Cir. 2020)).

The Agreement here provides, in relevant part:

> The arbitrator, and not any federal, territorial or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable[.]

Dkt. No. 4-1 at 4. This language compels the conclusion that the parties clearly and unmistakably delegated gateway issues of arbitrability to an arbitrator. It is similar to other clauses that courts have held to be "clear and unmistakable evidence" that the parties intended to arbitrate arbitrability. *See, e.g., Gomez v. Rent-A-Center*, No. 18-cv-1528, 2018 WL 3377172, at *5 (D.N.J. July 10, 2018) (concluding that the arbitration agreement—that stated that "the arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement"—was a "clear statement that the parties agreed to arbitrate all issues, including whether the Arbitration Agreement itself is enforceable."). In fact, the

delegation provision here is identical to both the *Gomez* delegation provision as well as the
delegation provision that the Supreme Court examined in *Rent-A-Center* (other than
substituting "territorial" for "state") where it affirmed the district court's holding that such
language "clearly and unmistakably" gave the arbitrator exclusive authority to decide both
arbitrability and whether the agreement was enforceable. *See Rent-A-Center*, 561 U.S. at 66.[4]

The Court therefore holds that Evans and Terminals clearly and unmistakably
delegated arbitrability disputes to an arbitrator. Thus, the issue that Evans raises here—
whether the 2019 Agreement applied to her 2023 termination—falls within the arbitrator's
purview.[5]

Finally, although Terminals based its Motion in part on the applicability of the
delegation clause, Dkt. No. 4 at 5-6, Evans did not address it all in her opposition, much less
challenge it. *See MacDonald v. CashCall, Inc.*, 883 F.3d 220, 227 (3d Cir. 2018) ("Without a
specific challenge to a delegation provision, the court must treat that provision as valid and
enforce it according to FAA § 4."). Because Evans has failed to specifically challenge the
delegation clause, and the delegation clause in her Agreement clearly and unmistakably

---

[4] The delegation provision in *Rent-A-Center* provided that "[t]he Arbitrator, and not any
federal, state, or local court or agency, shall have exclusive authority to resolve any dispute
relating to the interpretation, applicability, enforceability or formation of this Agreement
including, but not limited to any claim that all or any part of this Agreement is void or
voidable." *Rent-A-Center*, 561 U.S. at 66.
[5] The Court emphasizes that Evans maintains the right to challenge the applicability of the
Agreement before the arbitrator—she simply cannot bring such a challenge in district court
based on the delegation provision of the Agreement.

*Evans v. Limetree Bay Terminals*
1:23-cv-00042-WAL-EAH
Order
Page 17

committed threshold issues of arbitrability to the arbitrator, including the applicability and

enforceability of the Agreement, the Court will grant Terminals's Motion.

Accordingly, it is hereby **ORDERED** that:

1.      Defendant's Motion to Stay Proceedings and Compel Arbitration, Dkt. No. 3, is

**GRANTED**.

2.      This action is **STAYED** pending the completion of arbitration proceedings.

3.      The parties shall file a status report with the Court by **March 15, 2024**

concerning the status of the arbitration proceedings.

ENTER:

Dated: November 22, 2023          /s/ Emile A. Henderson III
                                  EMILE A. HENDERSON III
                                  U.S. MAGISTRATE JUDGE